IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INVACARE CORP., | ) | CASE NO. 1:04CV1580 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| RESPIRONICS, INC., | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OF OPINION |

On September 14, 2004, Respironics, Inc., defendant, filed a Motion To Disqualify (Docket No. 18) the undersigned Judicial Officer who had been assigned to this case by random draw. On October 25, 2004, this Judicial Officer denied the motion by marginal entry.

On November 19, 2004, the Defendant filed a Petition For a Writ of Mandamus in the Sixth Circuit seeking an order requiring this Court to grant the Motion To Disqualify. On February 7, 2005, the Sixth Circuit instructed this Court to issue a written opinion detailing the basis for its denial of the motion.

The Court hereby issues the following Memorandum of Opinion in compliance with the Sixth

Circuit's instructions.

## I. FACTS

On August 6, 2004, Invacare Corp., plaintiff, filed this action asserting antitrust violations against the Defendant. In its various claims, the Plaintiff alleges that the Defendant engaged in improper pricing practices, entered illegal tying and other contractual arrangements, and engaged in other anticompetitive conduct in connection with its sales and marketing of products to treat obstructive sleep apnea ("OSA").[1]

Upon filing, the action was assigned to this Judicial Officer, United States District Court Judge John M. Manos. At the time Complaint was filed, the Plaintiff was represented in part by Ernest P. Mansour of Mansour, Gavin, Gerlack, & Manos ("Mansour Gavin"), who signed the Complaint. My brother is a named partner in that law firm but never personally entered a notice of appearance. The Plaintiff also was represented by several attorneys of the law firm of Calfee, Halter & Griswold.

Five days later, on August 11, 2004, Ernest Mansour and his firm withdrew from the case, leaving only the Calfee Halter attorneys as counsel of record for the Plaintiff. No responsive pleading had been filed by the Defendant, and the time for doing so had not yet lapsed. On August 31, 2004, this Court granted the Defendant an extension of time to answer the Complaint. On September 13, 2004, the Defendant filed its Answer.

Also on September 13, 2004, the Defendant filed the current Motion To Disqualify predicated upon Ernest Mansour's initial representation of the Plaintiff. In addition, the Defendant filed a Motion

---

[1] According to the Complaint, OSA is a medical disorder characterized by the repeated cessation of breathing during sleep.

To Transfer the action (Docket No. 14) to the Western District of Pennsylvania, where the parties are involved in previously-filed patent litigation. The Defendant owns patents on its products for the treatment of OSA and has sued the Plaintiff for infringement. The Plaintiff denies infringement and asserts that the patents are invalid. The Defendant seeks to transfer this action to Pennsylvania on the ground that the antitrust and patent issues are related and should be tried in the same Court.[2]

In its motions, the Defendant states that Mansour Gavin represents the Plaintiff in the Pennsylvania litigation and also has represented the Plaintiff in a number of unrelated current and/or past matters since as early as 1988. This Court was unaware of these facts at the time the Complaint was filed. The Defendant claims, therefore, that because of the ongoing relationship between the Plaintiff and Mansour Gavin, this Court should be disqualified even though Mansour Gavin withdrew in this particular case.

On October 25, 2004, this Court denied the Motions To Transfer and To Disqualify. The current Petition For a Writ of Mandamus followed.

## II. LAW AND ANALYSIS

28 U.S.C. § 455 states in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances: . . .
>
> (5) He or his spouse, or a person within the third degree relationship to either of

---

[2] In its Motion To Transfer, the Defendant alternatively sought to stay this action pending completion of the patent litigation in Pennsylvania.

> them . . . (ii) Is acting as a lawyer in the proceeding, [or] (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455 protects against even the appearance of impropriety based upon whether a reasonable observer would question the judge's impartiality. <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 860-61 (1988). The standard is objective based upon what a reasonable person with knowledge of all the facts would conclude, and is not based upon the subjective view of a party. In a close question, the judge should recuse himself. <u>Union Planters Bank v. L&J Development Company, Inc.</u>, 115 F.3d 378, 383 (6th Cir. 1997); <u>United States v. Dandy</u>, 998 F.2d 1344, 1349 (6th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1163 (1994).

The parties agree with these general principles. Their primary dispute lies in the application of <u>In re Aetna Casualty and Surety Co.</u>, 919 F.2d 1136 (6th Cir. 1990), which they assert is the case closest on point from this circuit. That action arose out of a series of seven cases brought by the FDIC against Aetna stemming from a bond issued to cover liability for certain bank failures. A federal district court judge, Judge Hull, initially consolidated the cases, but then recused himself because his daughter and her firm appeared in four of them on behalf of the FDIC. The Sixth Circuit described the cases as follows: "In each of the seven cases, FDIC sought to hold Aetna liable on its furnished bond with respect to the failures of different banks operated and/or controlled by the Butcher family." <u>Id</u>. at 1137. Thus, the issues were substantially identical in all seven cases.

After several procedural difficulties, the Chief Judge of the Sixth Circuit reassigned the seven cases and ordered that they be consolidated. Three of the cases apparently were reassigned back to Judge Hull, but none of those three involved his daughter or her firm. Thus, Judge Hull decided to try

-4-

his three cases apart from the others.[3] Aetna then moved for Judge Hull to recuse himself pursuant to 28 U.S.C. §§ 455(a), (b)(4), and (b)(5)(ii) and (iii). Aetna argued that recusal of Judge Hull was required despite his daughter's lack of involvement in his three particular cases because "each of the seven cases involves virtually identical parties and legal issues and highly similar factual issues." In addition, Aetna argued that recusal was required because Judge Hull himself had an interest in the outcome of the litigation by virtue of "an ownership interest in a company which has similar fidelity bond coverage with Aetna". Id. at 1138. Judge Hull denied the motion.

With respect to the involvement of Judge Hull's daughter and her firm, the Sixth Circuit concluded that recusal was still appropriate even though neither his daughter nor her firm were involved in the three specific cases pending before him. The basis for this decision was that an order by Judge Hull could affect the other four cases in which his daughter's firm was involved because all cases involved "similar substantial issues of Aetna's liability on a common bond". Id. at 1343-44. In addition, the Sixth Circuit expressed concern over Judge Hull's potential direct interest in the outcome of the litigation because he had a one-half interest in a business having a similar indemnity relationship with Aetna, as well as a financial interest in a bank whose failure was covered by an Aetna bond at issue in one of his own cases. Id. at 144-45. The Sixth Circuit concluded that disqualification was required based on the totality of the circumstances: "<u>All of these considerations in combination</u> make it clear that we should mandate that Judge Hull should have recused himself in 1989 from making decisions in any of the consolidated FDIC-Aetna cases." Id. at 1145 (emphasis added).

---

[3] During the pendency of the actions, Judge Hull's daughter changed her employment to a firm not involved in any of the seven cases.

The Defendant argues that disqualification is appropriate because the relationship between the current antitrust case and the Pennsylvania patent case is comparable to the relationship among the seven cases in Aetna. Therefore, Mansour Gavin maintains a financial interest in the outcome of this case. The Court disagrees. In Aetna, the issues were nearly identical, all relating to the failures of related banks and the coverage of a common Aetna bond. Here, however, the effect that antitrust rulings might have on a patent case, always a complicated issue, is far more speculative.

On its face, the Complaint in the current case raises distinct factual and legal issues from the Pennsylvania patent case. The Defendant incorrectly phrases the issue in both cases broadly as whether the Plaintiff can sell its OSA treatment products. However, the precise issue in the antitrust case is whether the Defendant engaged in the specified anticompetitive activity, including predatory pricing and tying arrangements. Such categories of conduct are illegal independent of whether a party possesses valid patents. Similarly, whether a party has engaged in anticompetitive conduct does not address whether patents are valid and/or infringed. The patent case requires a comparison of the patent claims to the accused product and the prior art. Contrary to the Defendant's assertions, the patent analysis does not boil down to a definition of the product market, as required in connection with the antitrust claims. The two cases, therefore, present different factual and legal analyses. Accordingly, the alleged effects that the antitrust case could have on the patent case are tangential and speculative. The relationship is insufficient to conclude that Mansour Gavin has a financial interest in the outcome of this case.

Relatedly, the Defendant argues that disqualification is appropriate because from at least 1988, Mansour Gavin has represented the Plaintiff in a variety of matters. The Defendant essentially implies

-6-

that the long-standing relationship would somehow be affected by the outcome of the current case. Such an inference is neither warranted nor supported by any facts. If anything, the long-standing nature of the relationship reduces the impact that the result of any single piece of litigation might have. Like the previous argument, this argument is rooted in speculation.

In addition, in <u>Aetna</u> the Sixth Circuit relied upon the judge's own financial interests, which could have been directly affected by the outcome of the cases before him. No such direct interests are even alleged in the current case. <u>Aetna</u> requires consideration of the totality of the circumstances, which in this case weigh far less in favor of disqualification. Accordingly, this Court concludes that his impartiality cannot be reasonably questioned.

This Court notes that even the Defendant concedes that this case turns on the appearance of impropriety, and not upon the potential for actual bias or prejudice:

> In requesting writ relief, Respironics is not challenging Judge Manos' integrity. A motion for disqualification does not put at issue a judge's personal integrity. The question instead is whether a reasonable objective observer would question the judge's impartiality such that there is an *appearance* of impropriety.

(Defendants's Reply In Support of Petition For a Writ of Mandamus at 3, fn. 2.) Because, however, the analysis is based upon a reasonable observer having "knowledge of all the facts", a statement in the record that the concerned party does not question the Judge's integrity should weigh against disqualification. The purpose of the reasonable observer standard is to prevent a party from using subjective criteria to manufacture a basis for disqualification. It would seem at odds to conclude that a reasonable observer would question a Judge's impartiality when neither party does. If, for the record, the concerned party does not question a Judge's integrity, then neither should a reasonable observer.

-7-

There may be cases in which third parties or members of the public have a direct interest in the outcome of litigation that would warrant disqualification even if neither party questions a Judge's integrity. However, no such direct interests of third parties or the public are raised by the Defendant here. This case presents essentially a private business dispute. Any "public interest" is stated, if at all, in only the most general terms of confidence in the judiciary and in fair competition. Without any more direct public interest, the Defendant's statement of confidence in the Judge's integrity should not yield to more remote concerns.

In addition, other concerns for the confidence in the judicial system weigh against disqualification. Paramount is this Court's belief that a judicial officer has the responsibility – to the public, other members of the Court, and to the system at large – not to disqualify himself except in the most extraordinary circumstances. Cases in this district are assigned by random draw to prevent parties from "judge shopping" for a judicial officer or forum which they believe will be more favorable. Although there is no indication that any such conduct is intentionally occurring here, much like the appearance of impropriety, this Court must guard against the appearance of forum shopping. The public cannot be sent a message that motions to disqualify can be used as a tactic to acquire a new forum. Such a concern particularly exists here because the Defendant seeks not only disqualification, but also reconsideration by another judge of this Court's denial of the Motion To Transfer.

In addition, each judge has a duty to preside over cases assigned to him or her by random draw. Fellow judicial officers should not be burdened by additional cases for which there is no basis for reassignment. Furthermore, fair and efficient functioning of the judicial system depends upon the reluctance of judges to reassign cases except in unusual circumstances as provided by law. Mansour

-8-

Gavin represented the Plaintiff in this case only for five days, and then withdrew. At the time, a responsive pleading was not even due. Therefore, as far as this Court was concerned, Calfee Halter was the Plaintiff's sole counsel. These circumstances do not warrant the extraordinary act of recusal or disqualification.

### III. CONCLUSION

For the foregoing reasons, this Court reiterates that the Defendant's Motion For Disqualification (Docket No. 18) is DENIED.

IT IS SO ORDERED.


Issued: April 25, 2005                               s/ John M. Manos
                                                     UNITED STATES DISTRICT JUDGE